**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| FRANCIS SMITH, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. H-08-1912 |
| | § | |
| MICHAEL J. ASTRUE, Commissioner | § | |
| of the Social Security Administration, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM AND ORDER**

Pending before the court are Plaintiff Francis Smith ("Smith") and Defendant Michael J. Astrue, Commissioner of the Social Security Administration (the "Commissioner"), cross-motions for summary judgment. Smith appeals the partially favorable determination of an Administrative Law Judge ("the ALJ") that limits her Title XVI supplemental security income ("SSI") benefits to post-February 15, 2005. *See* 42 U.S.C. §§ 416(I), 423, 1382c(a)(3)(A). Having reviewed the pending motions, the submissions of the parties, the pleadings, the administrative record, and the applicable law, this Court is of the opinion that Smith's Motion for Summary Judgment (Docket Entry No. 13) should be denied, the Commissioner's Motion for Summary Judgment (Docket Entry No. 14) should be granted, and the Commissioner's decision denying benefits should be affirmed.

**I.    *Background***

On September 13, 1999, Smith filed an application for SSI benefits with the Social Security Administration ("SSA"), claiming she is disabled and unable to work since May 9, 1999. (R. 134-136A). Smith alleged that she suffered from pain in the right side of her body, especially the right shoulder, difficulty sleeping, problems with her legs, difficulty gripping with her hands, and a vision

problem.  (R. 136, 142).  After being denied benefits initially and on reconsideration, on May 17, 2000, Smith requested a hearing before an ALJ.  (R. 27-28, 37-42, 45-47, 48).

A hearing was held on March 5, 2002, before an ALJ in Nacogdoches, Texas, at which time the ALJ heard the testimony of Jerry Hildre, a vocational expert ("VE"), Charles Murphy, M.D., ("Dr. Murphy"), who is board-certified in internal medicine, and Antoinette Cicerello, Ph.D. ("Dr. Cicerello), medical experts ("ME"). (R. 19). After the hearing, two consultative examinations were scheduled for Smith; however, Smith did not attend because she was ill, could not obtain transportation, and allegedly did not receive the notices. (R. 19).  A supplemental hearing was held on August 21, 2002, in Lufkin, Texas, at which time, the ALJ heard testimony from orthopedic surgeon, George Weilepp, M.D. ("Dr. Weilepp") and psychologist, Betty Feir; Ph.D. ("Dr. Feir"). (R. 32).  Evelyn Hartman, a VE, appeared at the supplemental hearing but did not testify. (R. 32). Neither Smith nor her counsel appeared at the supplemental hearing.  (R. 32).  In a decision dated September 18, 2002, the ALJ denied Smith's application for SSI benefits.  (R. 29-36.)

On October 24, 2002, Smith appealed the decision to the Appeals Council of the SSA's Office of Hearings and Appeals. (R. 113, 118).  On January 27, 2004, the Appeals Council granted Smith's request for review and remanded the case to the ALJ for a new hearing because the recording of the first hearing was lost and the supplemental hearing was held less than 20 days after Smith and her counsel were notified of the date of the supplemental hearing.  (R. 120-121).

A new hearing was held on November 29, 2005 in Nacogdoches, Texas, at which time the ALJ heard testimony from Smith, Dr. Murphy, a clinical psychologist, Alvin Smith, Ph.D. ("Dr. Smith"), and Russell Bowden ("Bowden"), a VE.. (R. 334-392).  On April 20, 2006, the ALJ issued a new, partially-favorable decision, finding Davis disabled beginning on February 15, 2005, the date

2

on which Smith attained age 55.  (R. 19-26).  The ALJ determined that Smith could perform light unskilled work until February 15, 2005, when Smith turned 55 years of age. (R. 19-26).

Almost one year later, on May 14, 2007, Smith filed a request to review the ALJ's decision with the Appeals Council.  (R. 14).  Smith's counsel requested the hearing tapes and exhibits for the case.  (R. 14).  Approximately, twenty months later, on February 8, 2008, the Appeals Council tendered a copy of the exhibits and hearing tapes.  (R. 10-11).  The Appeals Council advised Smith that she had forty-five days (*i.e.*, March 20, 2008) to submit her statement regarding the facts in the case.  (R. 10).  The Council indicated that Smith could send her statement to the Council by facsimile.  (R. 10).

On March 12, 2008, Smith's counsel submitted, *via* facsimile, a six-page memorandum to the Appeals Council, arguing for a remand of the ALJ's decision.  Smith's legal memoranda, however, was not made part of the administrative transcript.  *See* Docket Entry No. 13, Exh A.  On April 14, 2008, the Appeals Council denied Smith's request to review the ALJ's decision (R. 7-9). On April 22, 2008, Smith's counsel sent correspondence to the Appeals Council indicating that it did not appear that the Appeals Council considered Smith's legal memorandum and requested that the Appeals Council reconsider its order denying review.  *See* Docket Entry No. 13, at Exh. B.  This too was not made part of the administrative transcript.  No further action was taken by the Appeals Council.  This rendered the ALJ's opinion the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2007).  On June 16, 2008, Smith filed this case seeking judicial review of the Commissioner's decision.

II.    *Analysis*

    A.    **Statutory Bases for Benefits**

    SSI benefits are authorized by Title XVI of the Act and are funded by general tax revenues. *See* SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY HANDBOOK, § 2100 (14th ed. 2001). The SSI Program is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. *See* 20 C.F.R. § 416.110. Eligibility for SSI is based upon proof of *indigence* and *disability*. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which she applies for benefits, no matter how long she has actually been disabled. *See Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); *see also* 20 C.F.R. § 416.335. The applicable regulation provides:

> When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application. If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month.

20 C.F.R. § 416.335. Thus, the month following an application, here, October 1999, fixes the earliest date from which benefits can be paid. Eligibility for SSI payments, however, is not dependent on insured status. *See* 42 U.S.C. § 1382(a).

    Applicants seeking benefits must prove "disability" within the meaning of the Act, which defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A).

4

B.      *Standard of Review*

1.      *Summary Judgment*

The court may grant summary judgment under FED. R. CIV. P. 56(c) when the moving party is entitled to judgment as a matter of law because there is no genuine issue as to any material fact. The burden of proof, however, rests with the movant to show that there is no evidence to support the nonmoving party's case.  If a reasonable jury could return a verdict for the nonmoving party, then a motion for summary judgment cannot be granted because there exists a genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "material" only if its resolution could affect the outcome of the case.  *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir. 1991).  When deciding whether to grant a motion for summary judgment, the court shall draw all justifiable inferences in favor of the nonmoving party, and deny the motion if there is some evidence to support the nonmoving party's position.  *See McAllister v. Resolution Trust Corp.*, 201 F.3d 570, 574 (5th Cir. 2000).  If there are no issues of material fact, the court shall review any questions of law *de novo*.  *See Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999).  Once the movant properly supports the motion, the burden shifts to the nonmoving party, who must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000).

### 2.    *Administrative Determination*

Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied to evaluate the evidence.  *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  "Substantial evidence" means that the evidence must be enough to allow a reasonable mind to support the Commissioner's decision; it must be more than a mere scintilla and less than a preponderance.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).

When applying the substantial evidence standard on review, the court "scrutinize[s] the record to determine whether such evidence is present." *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citations omitted).  If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.  *See Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision.  *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *See Masterson*, 309 F.3d at 272.  In short, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve."  *Masterson*, 309 F.3d at 272.

### C.    *ALJ's Determination*

An ALJ must engage in a five-step inquiry to determine whether the claimant is capable of performing "substantial gainful activity," or is, in fact, disabled:

1.    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.  *See* 20 C.F.R. § 416.920(b).

2.      An individual who does not have a "severe impairment" will not be found to be disabled.  *See* 20 C.F.R. § 416.920(c).

3.      An individual who "meets or equals a listed impairment in Appendix 1"of the regulations will be considered disabled without consideration of vocational factors.  *See* 20 C.F.R. § 416.920(d).

4.      If an individual is capable of performing the work she has done in the past, a finding of "not disabled" must be made.  *See* C.F.R. § 416.920(e).

5.      If an individual's impairment precludes performance of her past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if any work can be performed.  *See* 20 C.F.R. § 416.920(f).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); *accord Boyd*, 239 F.3d at 705.  The claimant has the burden to prove disability under the first four steps.  *See Myers*, 238 F.3d at 619.  If the claimant successfully carries this burden, the burden shifts to the Commissioner in step five to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing.  *See Masterson*, 309 F.3d at 272; *Greenspan v. Shalala*, 38 F.3d 232, 236.  If the Commissioner is able to verify that other work exists in significant numbers in the national economy that the claimant can perform in spite of his or her existing impairments, the burden shifts back to the claimant to prove that he or she cannot, in fact, perform the alternate work suggested.  *See Boyd*, 239 F.3d at 705.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *See id*.

The mere presence of an impairment does not necessarily establish a disability.  *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992).  An individual claiming disability benefits under the Act has the burden to prove that she suffers from a disability as defined by the Act.  *See Newton*, 209 F.3d at 452; *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Johnson v. Bowen*, 864 F.2d 340,

343 (5th Cir. 1988); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).  A claimant is deemed

disabled under the Act only if she demonstrates an "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months." *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001); *accord Newton*, 209

F.3d at 452; *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999); *Selders*, 914 F.2d at 618; *see*

*also* 42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity is defined as work activity involving

significant physical or mental abilities for pay or profit."  *Newton*, 209 F.3d at 452-53; *see also* 20

C.F.R. § 416.972.

    A medically determinable "physical or mental impairment" is an impairment that results from

anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques.'"  *Hames v. Heckler*, 707 F.2d 162, 165

(5th Cir. 1983) (quoting 42 U.S.C. § 423(d)(3)).  "[A]n individual is 'under a disability, only if [her]

impairments are of such severity that [she] is not only unable to do [her] previous work but cannot,

considering [her] age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy . . . .'"  *Greenspan*, 38 F.3d at 236 (quoting 42

U.S.C. § 423(d)(2)(A)).  This is true regardless of whether such work exists in the immediate area

in which the claimant resides, whether a specific job vacancy exists, or whether the claimant would

be hired if she applied. *See Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981); *see also* 42

U.S.C. § 423(d)(2)(A).

In the case at bar, when addressing the first four steps the ALJ determined:

1.    The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 C.F.R. §§ 416.920(b) and 416.971 et seq.).

2.    The claimant has the following severe impairments: coronary artery disease (status post 2 stents);[1] mild COPD;[2] soft tissue problems in the right shoulder; and a dysthymic disorder[3] (20 C.F.R. § 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d)).

4.    The undersigned finds that the claimant has the residual functional capacity to lift/carry 10 pounds frequently, and 20 pounds occasionally; sit, stand and walk without limitation; perform overhead reaching with the right arm occasionally; but cannot climb. The claimant can perform unskilled work.

5.    The claimant is unable to perform any of her past relevant work (20 C.F.R. § 416.965).

(R. 21-22, 24).  As to the fifth step, the ALJ concluded:

6.    The claimant was 49-years old on the alleged onset date of disability. This is defined in the regulations as a younger individual age 45-49. On February 15, 2005, the claimant attained 55 years of age and her category changed to advanced age (20 C.F.R. § 416.963).

---

[1] "Coronary artery disease" refers to atherosclerosis of the coronary arteries, which may cause angina pectoris, myocardial infarction, and sudden death.  Both genetically determined and avoidable risk factos contribute to the disease; they include hypercholesterolemia, hypertension, smoking, diabetes mellitus, and low levels of high density lipoproteins. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 514 (29th ed. 2000).

[2] "Chronic obstructive pulmonary disease" ("COPD") is a disorder characterized by persistent or recurring obstruction of bronchial air flow, such as chronic bronchitis, asthma, or pulmonary emphysema. *See* DORLAND'S, *supra*, at 513.

[3] "Dysthymic disorder" is a mood disorder characterized by depressed feeling (sad, blue, low), loss of interest of pleasure in one's usual activities, and by at least some of the following: altered appetite, disturbed sleep patterns, lack of energy, low self esteem, poor concentration or decision-making skills, and feelings of hopelessness.  Symptoms have persisted for more than two years but are not severe enough to meet the criteria for major depressive disorder. *See* DORLAND'S, *supra*, at 529.

7.      The claimant has a marginal education and is able to communicate in English (20 C.F.R. § 416.964).

8.      Due to the claimant's age, transferability of job skills is not material to the determination of disability prior to February 15, 2005.  Beginning on that date, the claimant has not been able to transfer any job skills to other occupations within the residual functional capacity defined above (20 C.F.R. § 416.968).

9.      Prior to February 15, 2005, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were significant number of jobs in the national economy that the claimant could have performed (20 C.F.R. §§ 416.960(c) and 416.966).

10.     Beginning on February 15, 2005, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that the claimant could perform (20 C.F.R. § 416.960 and 416.966).

11.     The claimant was not disabled prior to February 15, 2005, but became disabled on that date and has continued to be disabled through the date of this decision (20 C.F.R. § 416.920(g)).

(R. 24-26).

This Court's inquiry is limited to a determination of whether there is substantial evidence in the record to support the ALJ's findings and whether the proper legal standards have been applied. *See Masterson*, 309 F.3d at 272; *Watson*, 288 F.3d at 215; *Myers*, 238 F.3d at 619; *Newton*, 209 F.3d at 452; *Greenspan*, 38 F.3d at 236; *see also* 42 U.S.C. §§ 405(g), 1383(c)(3).  To determine whether the decision to deny Smith's claim for disability benefits is supported by substantial evidence, the court weighs the following four factors:  (1) the objective medical facts; (2) the diagnoses and opinions from treating and examining physicians; (3) the plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) the plaintiff's age, educational

background, and work history.  *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)).  Any conflicts in the evidence are to be resolved by the ALJ, and not the Court.  *See Newton*, 209 F.3d at 452; *Brown*, 192 F.3d at 496; *Martinez*, 64 F.3d at 174; *Selders*, 914 F.2d at 617.

> **D.**     ***Issues Presented***

Smith contends the Appeals Council committed reversible error by failing to include her counsel's legal memorandum in the administrative record and failing to consider the arguments contained in the legal memorandum before denying Smith's request to review the ALJ's decision. Smith further contends that the ALJ erred by failing to acknowledge a consultative examination by Frankie Clark, Ph.D. ("Dr. Clark"), which, according to Smith, corroborates her disability.  Finally, Smith claims that the ALJ's decision to deny benefits from prior to February 15, 2005, was not supported by substantial evidence.  *See* Docket Entry No. 13.  The Commissioner disagrees with Smith' s contentions, maintaining that the ALJ' s decision is supported by substantial evidence. *See* Docket Entry No. 14.

> **E.**     ***Review of the ALJ's Decision***

When assessing a claim for disability benefits, "[i]n the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work."  *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990).  If the claimant is not actually working and her impairments match or are equivalent to one of the listed impairments, she is presumed to be disabled and qualifies for benefits without further inquiry.  *See id*. at 532; *see also* 20 C.F.R. § 416.920(d).  When a claimant has multiple impairments, the Act requires the Commissioner to "consider the combined effect of all of the individual's impairments without regard

11

to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. § 423(d)(2)(B); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).  The relevant regulation similarly provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 416.923; *see also Loza*, 219 F.3d at 393.  The medical findings of the combined impairments are compared to the listed impairment most similar to the claimant's most severe impairment.  *See Zebley*, 493 U.S. at 531.

The claimant has the burden to prove at step three that her impairment or combination of impairments is equivalent to or greater than a listed impairment.  *See id.* at 530-31; *Selders*, 914 F.2d at 619.  The listings describe a variety of physical and mental illnesses and abnormalities, and are typically categorized by the body system they affect.  *See Zebley*, 493 U.S. at 529-30.  Individual impairments are defined in terms of several specific medical signs, symptoms, or laboratory test results.  *See id.* at 530.  For a claimant to demonstrate that her disorder matches an Appendix 1 listing, it must meet *all* of the specified medical criteria. *See id*.  An impairment, no matter how severe, does not qualify if that impairment manifests only some of the specified criteria.  *See id.*

For a claimant to qualify for benefits by showing that her unlisted impairment, or combination of impairments, is equivalent to a listed impairment, she must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.  *See id.* at 531 (citing

20 C.F.R. § 416.926(a)).  A claimant's disability is equivalent to a listed impairment if the medical

findings are at least equal in severity and duration to the listed findings.  *See* 20 C.F.R. § 416.926(a).

The applicable regulation further provides:

> (1)(I)   If you have an impairment that is described in the Listing of Impairments in
> Appendix 1 of Subpart P of this chapter, but—
>
>> (A)      You do not exhibit one or more of the medical findings
>> specified in the particular listing, or
>>
>> (B)      You exhibit all of the medical findings, but one or more of the
>> findings is not as severe as specified in the listing;
>
> (ii)      We will nevertheless find that your impairment is medically equivalent to that
> listing if you have other medical findings related to your impairment that are at least
> of equal medical significance.

20 C.F.R. § 416.926(a).  Nonetheless, "[a] claimant cannot qualify for benefits under the

'equivalence' step by showing that the overall functional impact of [her] unlisted impairment or

combination of impairments is as severe as that of a listed impairment."  *Zebley*, 493 U.S. at 531.

Ultimately, the question of equivalence is an issue reserved for the Commissioner.  *See Spellman v.

Shalala*, 1 F.3d 357 (5th Cir. 1993); 20 C.F.R. § 416.927(e).

A review of the medical records submitted in connection with Smith's administrative hearing

reveals a history of chronic right shoulder pain, which she incurred from a car accident in the early-

1990's.  (R. 209, 230).  By history, Smith reported that she had a stroke in 1995, which has left her

with right-sided weakness.  (R. 230).  Smith further contends that, since 1996, she has been

experiencing depressive symptoms.  (R. 209).

On November 19, 1999, Smith visited Sushil George, M.D. ("Dr. George"), complaining of

pain in her right shoulder, right elbow, right wrist, and legs.  (R. 190).  Dr. George reported that

Smith had tenderness of the right shoulder; however, found that she was able to elevate approximately 110 degrees, and backward extension, approximately 20 degrees. (R. 191). Dr. George reported that Smith's elbow, wrist, and hand movements were normal.  (R. 191). Additionally, Dr. George noted that there was no swelling of any joints. (R. 191).  Smith's hip, knees, and ankles showed normal range of motion. (R. 191).  Dr. George diagnosed Smith with pain in the right shoulder, possibly periarthritis, and with possible symptoms of depression.  (R. 191). An x-ray of Smith's right ankle revealed no acute ankle pathology.  (R. 192).

On December 1, 1999, M. C. Schlecte, M.D. ("Dr. Schlecte") conducted a physical residual functional capacity assessment of Smith.  (R. 193-200).  Smith alleged shoulder pain, and was taking over-the-counter Tylenol for the pain.  A handwritten notation had "liar," and no atrophy with a normal range of motion.  (R. 194-195).  Dr. Schlecte opined that Smith could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, sit, stand, and walk about 6 hours in an 8-hour workday.  (R. 194).  He further found Smith had an unlimited ability to push/pull.  (R. 194).

On January 27, 2000, Smith underwent a psychiatric evaluation by Jamie Ganc, M.D. ("Dr. Ganc").  (R. 201-203).  Smith advised Dr. Ganc that she experienced intense neck pain ever since the car wreck in the early-1990's.  (R. 201).  On the Beck Depression Inventory Scale, Smith received a score of 44, which placed her at a severe level of depression.  (R. 203).  Dr. Ganc, thereafter, diagnosed Smith with major depressive disorder, agitated type.  He further assigned  a Global Assessment of Functioning ("GAF") rating of 45.[4]  Dr. Ganc opined that Smith's prognosis

---

[4]  A GAF score represents a clinician's judgment of an individual's overall level of functioning.  *See* AMERICAN PSYCHIATRIC ASSOCIATION: DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV-TR") 32 (4th ed. 2000).  The reporting of overall functioning is done by using the GAF Scale, which is divided into ten ranges of functioning—*e.g.*, 90 (absent or minimal symptoms) to 1 (persistent danger of severely hurting self or others, or unable to care for himself).  The GAF rating is within a particular

was poor, as she had very little insight into her problems.  (R. 203A).  Dr. Ganc recommended

medication and individual psychotherapy.  (R. 203A).

On April 10, 2000, Smith visited Marciano Limsiaco, M.D. ("Dr. Limsiaco"), for a

psychiatric evaluation. (R. 209-211).  Dr. Limsiaco reported that Smith's cognitive ability seemed

concrete with fair insight as well as judgment. (R. 211).  Dr. Limsiaco diagnosed Smith with

dysthymia and recorded her GAF at 60.[5] (R. 211).  According to Dr. Limsiaco, Smith had a poor

prognosis because of the chronicity of the depressive symptoms and the presence of a chronic right

shoulder pain.. (R. 209).

On April 12, 2000, Smith had an opthalmological consultative examination. (R. 205).  Smith

reported blurry vision, her right eye watering frequently, and television being too bright for her eyes.

(R. 205).  Her visual acuity, without correction, was recorded as 20/50 (right eye) and 20/40 (left

eye).  Her visual acuity with best correction was noted as 20/30 (right eye) and 20/40 (left eye).

(R. 205).

On April 28, 2000, a psychiatric review technique form was prepared by a State Agency

reviewing physician. (R. 212-220).  It was reported that Smith had a slight restriction of activities

of daily living, slight difficulties in maintaining social functioning, slight difficulties in maintaining

concentration, persistence or pace and had not had episodes of decompensation as a result of a

---

decile if either the symptom severity or the level of functioning falls within the range. Lower GAF scores
signify more serious symptoms.  A GAF rating of 45 indicates a " serious" impairment in social,
occupational, or school functioning (*e.g.*, no friends, unable to keep a job).  *See id.* at 34.

[5]  A GAF rating of 60 indicates " moderate symptoms" (*e.g.*, flat affect and circumstantial speech,
occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few
friends, conflicts with peers or co-workers).  *See* DSM-IV-TR, *supra*, at 34.

mental impairment.  (R. 212-220).  The ALJ accepted the assessment as generally supported by the record and credible.  (R. 35-36).

On May 9, 2000, a physical residual functional capacity form was completed by Frank H. Gregg, M.D. ("Dr. Gregg").  (R. 221-228).  Dr. Gregg found that Smith could occasionally lift 50 pounds, frequently lift 25 pounds, and stand, walk, and sit for 6 hours in an 8-hour workday. (R. 222).  Dr. Gregg found no postural, manipulative, visual, communicative, or environmental limitations.  (R. 223-225).  Dr. Gregg noted that Smith's alleged symptoms/functional limitations were credible, but not disabling based on the medical evidence of record.  (R. 226).

On March 11, 2002, Smith reported to the emergency room of Northeast Medical Center Hospital, complaining of left hand, right shoulder, and left-sided chest pain.  (R. 247-257).  The attending physician, Ethan Brown, M.D. ("Dr. Brown"), noted that Smith was "a middle-age female who is in mild pain."  (R. 255).  Dr. Brown reported that Smith was taking Tylenol for pain. (R. 255).  Smith had no extremity weaknesses.  (R. 255).

On April 16, 2002, Smith met with Dr. Clark for a psychological evaluation to assess her allegations of right shoulder pain as well as depression.  (R. 229-239A).  Dr. Clark assessed Smith with a   full-scale IQ of 62, which placed her in the deficient range of intellectual functioning. (R. 234-235).  Dr. Clark noted that Smith's achievement scores fell within the deficient range and were commensurate with her intellectual functioning.  (R. 235).  Because her achievement scores were not significantly lower than her full scale IQ of 62, she does not meet the criteria for a learning disability.  (R. 235).  Dr. Clark further noted that Smith met the criteria for a diagnosis of borderline

16

intellectual functioning as opposed to mental retardation.[6]  (R. 237).  Dr. Clark diagnosed Smith with major depressive disorder and having a GAF rating of 50.[7]  (R. 236-237).  Dr. Clark indicated that Smith's prognosis was poor due to the long-standing nature of Smith's problems, poor insight, and resistance to psychological interpretations.  (R. 236).  Dr. Clark recommended that Smith consult with a psychiatrist to determine the advisability of anti-depressant medication.  (R. 237).

On April 30, 2002, Smith visited George Isaac, M.D. ("Dr. Isaac") for an orthopedic examination.  (R. 240-242).  Dr. Isaac reported that Smith retained a normal function of her upper and lower extremities excluding her upper right shoulder. (R. 241).  Dr. Isaac's impression was that Davis suffered from pain in her right shoulder and a history of depression.  (R. 240).  An x-ray of Smith's right shoulder revealed was unremarkable.  (R. 244).  Dr. Isaac opined that Smith was able to sit for 60 minutes, stand for 5 minutes, walk one block, climb one-half a flight of stairs, lift/carry five pounds to 40 feet.  (R. 240-241).  Dr. Isaac also reported that Ms. Smith was able to lift and carry objects of 15-20 lbs. occasionally and 10 lbs. frequently.  (R. 242).

On December 4, 2003, Smith presented at the East Texas Medical Center, complaining of upper chest and lower abdominal pain.  (R. 299).  Thaddeus Tolleson, M.D. ("Dr. Tolleson") noted that Smith arrived at the emergency room for an acute inferior ST segment elevation myocardial

---

[6]  "Mental retardation" refers to a mental disorder characterized by significantly subaverage general intellectual functioning associated with impairments in adaptive behavior and manifested during the developmental period.  It is classified on the basis of severity as *mild, moderate, severe, and profound*; a fifth subgroup, *borderline intellectual functioning*, is sometimes included.  *See* DORLAND'S, *supra*, at 1562.  Mild mental retardation is that in which IQ is between 50-55 and 70.  Moderate mental retardation is that in which IQ is between 35-40 and 50-55.  Severe mental retardation is that in which IQ is between 20-25.  Profound mental retardation is that in which IQ is less than 20-25.  *See id.*

[7]  A GAF rating of 50 indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job).

infarction.[8]  (R. 301).  Smith was treated initially with medications.  (R. 301).  Subsequently, cardiologist, David Hector, M.D. ("Dr. Hector") performed percutaneous transluminal coronary angioplasty coronary stenting of Smith's right coronary artery.  (R. 315).  Smith was discharged on December 8, 2003, from the hospital and advised to return in four to six weeks for a follow-up examination.  (R. 297).

In a letter dated July 22, 2005, Masoud Romezi, M.D. ("Dr. Romezi"), opined that Smith had been diagnosed with coronary artery disease, COPD, hypertension,[9] and had a history of myocardial infarction.  (R. 328).  According to Dr. Romezi, due to Smith's problems and exacerbation of her symptoms, she was unable to work and should be considered permanently disabled.  (R. 328).

"[O]rdinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan*, 38 F.3d at 237; *accord Myers*, 238 F.3d at 621; *Loza*, 219 F.3d at 395; *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). The opinion of a specialist generally is accorded greater weight *than* that of a non-specialist.  *See Newton*, 209 F.3d at 455; *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994), *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103, 108 (2000).  Medical opinions are given deference, however, only if those opinions are shown to be more than conclusory and supported by clinical and laboratory findings.  *See Scott*, 770 F.2d at 485.

---

[8] "Myocardial infarction" is gross necrosis of the myocardium as a result of interruption of the blood supply to the area; it is almost always caused by atherosclerosis of the coronary arteries, upon which coronary thrombosis is usually superimposed.  *See* DORLAND'S, *supra*, at 895.

[9] "Hypertension" refers to high arterial blood pressure.  *See* DORLAND'S, *supra*, at 858.

Moreover, a treating physician's opinions are far from conclusive and may be assigned little or no weight when good cause is shown. *See Myers*, 238 F.3d at 621; *Loza*, 219 F.3d at 395; *Greenspan*, 38 F.3d at 237. Good cause may permit an ALJ to discount the weight of a treating physician's opinion in favor of other experts when the treating physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *See Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 456; *see also Brown*, 192 F.3d at 500; *Greenspan*, 38 F.3d at 237; *Paul*, 29 F.3d at 211. It is well settled that even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. *See Paul*, 29 F.3d at 211; *accord Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 455.

### 1.    *Appeals Council's Failure to Address Legal Memorandum*

Smith contends that the Appeals Council committed reversible error because it issued a form denial on April 14, 2008, without addressing or even acknowledging receipt of the legal memorandum that Smith allegedly forwarded to the Appeals Council by facsimile on March 12, 2008. *See* Docket Entry No. 13, at Exh. A, D. Similarly, Smith argues that the Appeals Council has failed to comply with its signed certification proclaiming that the Commissioner has filed its "full and accurate transcript of the entire record of proceedings in this case," as neither Smith's March 12, 2008, legal memorandum nor her April 22, 2008, correspondence seeking reconsideration were made part of the administrative record. *See id*., at Exh. B, E.

Although the Commissioner agrees that any evidence submitted to the Appeals Council becomes part of the record on review by this Court, the Commissioner disagrees that the misplacement or non-inclusion of Smith's attorney's legal memorandum constitutes fundamental,

reversible error.  The Commissioner maintains that, assuming, *arguendo*, that the Appeals Council actually received the legal memorandum, it merely contained bullet-point references to the evidence that was already in the record, had been considered by the ALJ, and was being reviewed by the Appeals Council.  Smith's legal memorandum did not contain any additional evidence; likewise, it did not contain additional evidence that was both new and material.  Thus, in this instance, the Appeals Council's failure to address Smith's legal memorandum was not reversible error.

### 2.    *Dr. Clark's Psychological Evaluation*

Smith next argues that the ALJ erred because he failed to consider Dr. Clark's psychological evaluation dated April 16, 2002.  (R. 229-238).  Smith alleges that Dr. Clark's consultative examination corroborated Smith's mental impairment—*i.e.*, major depression[10]—and the ALJ erred by ignoring the results.  Smith's contentions are belied by the record.  As an threshold matter, the ALJ noted that he had reviewed all of the evidence in the record in assessing Smith's residual functional capacity.  (R. 22).  Indeed, the ALJ expressly discussed Dr. Clark's evaluation in his first decision, and, on remand, Dr. Clark's report was the center of a lengthy exchange between the ALJ, Smith's counsel, and Dr. Smith (an ME).  (R. 34, 341, 355-371).  Consequently, Smith's contention that the ALJ failed to consider Dr. Clark's report lacks merit.

### 3.    *ALJ's Decision to Deny Benefits for the May 9, 1999, through February 14, 2005, timeframe*

Lastly,  Smith asserts that the ALJ's decision to deny benefits for the May 9, 1999, through February 14, 2005, timeframe was in error.  In support of her contention, Smith relies on the letter

---

[10] " Major depressive disorder"denotes a mood disorder characterized by the occurrence of one or more major depressive episodes and the absence of any  history or  manic, mixed, or hypomanic episodes.  *See* Dorland's, *supra*, at 530.

20

of Dr. Romezi, opining that she is unable to work.  (R. 328).  An opinion that a claimant is "unable to work" or is "disabled" is an opinion on a legal issue that is reserved for the Commissioner and, as such, is never entitled to "controlling weight." 20 C.F.R. § 404.1527; *see Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Notwithstanding, as the Commissioner points out, Dr. Romezi's letter was issued on July 22, 2005, which was more than 5 months *after* the ALJ found Smith did, in fact, become disabled.  (R. 26, 328).  Thus, Dr. Romezi's opinion that Smith was unable to work as of July 22, 2005, provides no support that Smith was disabled *prior* to February 15, 2005.

In any event, Dr. Murphy testified at the administrative hearing that Dr. Romezi's opinion was inconsistent with the objective medical evidence of record and based on no objective testing of his own.  (R. 23, 349).  Dr. Murphy stated that Smith retained a residual functional capacity for light work, with the additional restriction of no more that occasional overhead reaching with the right upper extremity and no climbing.  (R. 23-24, 350).  Dr. Murphy's assessment of Smith's RFC is supported by the medical record of evidence.  Smith had no spinal deformities or tenderness, normal range of motion in her cervical spine, normal x-rays for her right shoulder, and no active cardiopulmonary abnormalities in chest x-rays dated September 2004.  (R. 23, 240-246, 266, 322, 326).

Next, Smith argues that the ALJ's conclusion that Smith only suffered from a dysthymic disorder is not supported by substantial evidence.  Smith contends that the diagnoses of Smith with major depression by Drs. Clark, Romezi, and Ganc as well as her prescriptions for psychotropic medications for depression support a finding of a disabling mental impairment of depression prior to February 15, 2005.  The Court disagrees.  The ALJ did not disregard Smith's alleged mental impairment, as evidenced by the ALJ's inclusion of dysthymia among Smith's medically severe

21

impairments.  (R. 21).  Instead, the ALJ carefully considered and properly discounted certain evidence as it related to Smith's alleged mental limitations.  In this regard, the ALJ noted that Smith's MMPI score was invalid and indicative of malingering or exaggerating symptoms.  (R. 24 & n.2).  At the administrative hearing, Dr. Smith testified in this regard, noting that the MMPI given by Dr. Ganc was invalid because Smith had an "F scale" or "frequency scale" well above 100, and 8 of 10 clinical scales were elevated.  (R. 24, 201-203A, 343-344).  Dr. Smith further testified that he disagreed with Dr. Ganc's diagnosis of major depression and his assessment of Smith's prognosis as "very poor" because the opinions were based on invalid evidence.  (R. 360-361).  According to Dr. Smith, Dr. Clark's assessment of "guarded" was more accurate.  (R. 361).

Additionally, the ALJ properly noted that the medical evidence did not demonstrate that her alleged depression was disabling:

> Although the claimant alleges that her depression was disabling, the undersigned notes that the medical evidence of record does not show that the claimant sought regular treatment from a specialist in regard to this condition.  This failure tends to belie the claimant's allegations of a disabling condition.  Further, the undersigned notes that the above-mentioned medical evidence of record illustrates that the claimant's pain did not render [her] completely unable to perform any substantial gainful work due to pain.  The mere inability to work without some pain and/or discomfort does not necessarily constitute a "disability" for Social Security purposes.

(R. 23).  The Commissioner also correctly notes that Smith failed to even allege a mental impairment when filing her disability claim.  (R. 142).  Although Smith completed her own disability and work history reports, she only alleged physical ailments.  (R. 141-172).  In addition to seldom seeking medical treatment for her alleged mental impairment, Smith repeatedly failed to appear for the consultative examinations that the Commissioner's agents, including the ALJ, scheduled for her at the Government's expense.  (R. 19 & n.1, 337-340).  Finally, in his psychological evaluation of

Smith, Dr. Clark declined to assess Smith with mild mental retardation because she neither alleged nor demonstrated adaptive functioning commensurate with her low IQ scores and previous testing from a psychiatrist placed her in the higher category of "low average" intellectual functioning. (R. 237).

In light of the above, the decision to deny benefits prior to the May 9, 1999, through February 14, 2005, timeframe is supported by substantial evidence.

**III.**   ***Conclusion***

Accordingly, it is therefore

**ORDERED** that Smith's Motion for Summary Judgment (Docket Entry No. 13) is **DENIED**. It is further

**ORDERED** that the Commissioner's Motion for Summary Judgment (Docket Entry No. 14) is **GRANTED**.  It is further

**ORDERED** that the Commissioner's decision denying disability benefits is **AFFIRMED**. Finally, it is

**ORDERED** that this matter is **DISMISSED** from the dockets of this Court.

**SIGNED** at Houston, Texas, on this the 29th day of September, 2009.

Calvin Botley
United States Magistrate Judge